UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ZELDA D. KEATON,

                              Plaintiff,                         15-cv-5354 (PKC)

        -against-                                          OPINION
                                                                       AND ORDER

UNIQUE PEOPLE SERVICES, INC., YVETTE
BRISETTE ANDRE, CHERYELLE
CRUICKSHANK, and SONJI PHILLIPS,[1]

                              Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Zelda D. Keaton, proceeding *pro se* but previously represented by counsel, brings this action against her former employer and supervisors for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*  On June 30, 2017, after the close of discovery, defendants Unique People Services, Inc. ("Unique"), Yvette Brisette Andre, Cheryelle Cruickshank, and Sonji Phillips moved for summary judgment. (Dkt. 47).  The deadline for Keaton's opposition was August 4, 2017, but Keaton filed no papers until Keaton wrote to the Court by letter dated December 28, 2017, requesting additional information on the status of defendants' motion. (Dkts. 46, 54).  Although the Court then extended the time for any response by Keaton to

---

[1] The Clerk of Court is respectfully directed to conform the caption of the case to the above, which reflects the defendants named in the operative Second Amended Complaint.  (Dkt. 25).

The Court further notes that defendant Yvette Brisette Andre's name is spelled inconsistently as "Brisette," "Brissett," and "Brissette."  (E.g., Andre Aff. at 1, 10; Ex. A).  The Court uses "Brisette," used at the outset of Andre's sworn affidavit.  (E.g., Andre Aff. at 1).

Mailed to Zelda Keaton 08/03/2018

January 22, 2018 (Dkt. 54), Keaton never filed opposition papers. Defendants noted the same in their January 29, 2018 letter to the Court, a copy of which was sent to Keaton. (Dkt. 55). Keaton has made no further communications with the Court in the roughly six months that have passed since that time. The Court thus reviews defendants' motion as unopposed and, for the reasons to be explained, grants the motion for summary judgment.

RULE 56 STANDARD.

The Court "shall" grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a summary judgment motion, courts "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (omission in original) (quoting Aulicino v. New York City Dep't of Homeless Servs., 580 F.3d 73, 79–80 (2d Cir. 2009)). The movant must bring forward evidence on each material element of his or her claim or defense that demonstrates his or her entitlement to relief. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. See id.

When a motion for summary judgment is unopposed, as it is here, the Court "must review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law," because it "'may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Id. at 244, 246 (quoting Amaker

v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)). "[I]n determining whether the moving party has met this burden . . ., the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Id. at 244.

In employment discrimination suits where the "merits turn on a dispute as to the employer's intent," courts exercise caution in granting summary judgment motions. Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). Nonetheless, when a discrimination case lacks a genuine issue of material fact, summary judgment remains available. Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006).

Courts afford special solicitude to *pro se* litigants confronted with motions for summary judgment. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). As required by Local Civil Rule 56.2, defendants attached to their motion the Notice to a *Pro Se* Litigant Opposing Summary Judgment. (Dkt. 52) Although Keaton has submitted no opposition, the Court draws every reasonable inference in her favor. See Delaney, 766 F.3d at 167.

BACKGROUND.

Broadly, the Complaint alleges that defendants (i) retaliated against Keaton for her complaints regarding Unique's discriminatory hiring practices and (ii) treated her more harshly than similarly situated employees on the basis of her national origin or religion. (Second Amended Complaint ("SAC" or "Complaint") ¶¶ 27–37). Keaton seeks compensatory and punitive damages, along with costs and fees. (Id. at 8).

Since Keaton has not submitted a statement of facts pursuant to Local Civil Rule 56.1, the Court examines the record guided by defendants' Rule 56.1 statement to the extent it is supported by materials in the record. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d

241, 244 (2d Cir. 2004); see also Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) ("[A] plaintiff opposing summary judgment may not rely on his complaint to defeat the motion . . . ."). Keaton worked at Unique, a non-profit social services agency, from 1998 until 2013 as a manager overseeing certain of Unique's residences. (Defs. 56.1 ¶¶ 1, 6). Unique runs residential facilities to provide housing and other services to developmentally disabled individuals, among other populations. (Id.). Keaton's responsibilities included overseeing the day-to-day operation of the residential facilities and the staff serving them. (Id. ¶ 7). At Unique, defendants Andre, Cruickshank, and Phillips served as Executive Director, Associate Executive Director, and Director of Developmental Disabilities Services, respectively. (Id. ¶ 8).

Before approximately 2010 or 2011, managers like Keaton were able to recruit, interview, and hire their own subordinate residential facility staff. (Id. ¶ 44). Around 2010 or 2011, however, the hiring process changed, such that Unique's central human resources department provided a list of potential applicants for each manager to interview when a new position opened. (Id. ¶¶ 45–46). Keaton complained about the quality of applicants, believing that more qualified candidates were being passed over in favor of candidates connected to defendant Andre by virtue of their Caribbean national origin or Seventh Day Adventist religion. (Id. ¶¶ 47–50). Specifically, she objected to failures to hire Spanish-speaking applicants to facilitate Unique's care for Spanish-speaking residents, including by way of administration of ad hoc English language proficiency tests to bilingual applicants. (Id. ¶ 50; Keaton Dep. 199:15–204:21). She complained about these practices to personnel in Unique's internal human resources department and at various staff meetings. (Defs. 56.1 ¶ 57; Keaton Dep. 180:25–181:11, 207:7–12).

On May 3, 2013, a dispute between a Unique staff member and an occupational therapist broke out at one of the residential facilities managed by Keaton. (Defs. 56.1 ¶¶ 7, 9). The incident occurred in the vicinity of a resident and involved the staff member referring to the resident as "the white boy" and making a threatening remark to the occupational therapist. (Id. ¶¶ 9, 14) Although the incident was reported to Keaton the same day, she did not report the matter to her supervisors. (Id. ¶ 10). On May 6, 2013, the occupational therapist reported the incident for investigation by Unique and by Unique's state regulator, the Office for People with Developmental Disabilities ("OPWDD"), alleging potential psychological abuse towards the resident based on the resident overhearing or feeling threatened by the remarks. (Id. ¶¶ 11, 17; Andre Aff. Ex. F). Unique suspended Keaton and the staff member on or about May 10, 2013 pending the completion of its investigation. (Defs. 56.1 ¶¶ 12, 22).

Neither investigation concluded that the incident constituted abuse. (Id. ¶ 14; Andre Aff. Exs. F, I). In relevant part, the internal investigation concluded that Keaton (i) impermissibly allowed the staff member involved in the dispute to continue his duties with the resident on the day of the dispute and (ii) failed to report the allegation of abuse of a resident who was present for a verbal altercation among staff. (Defs. 56.1 ¶¶ 14–16). As a result of OPWDD's investigation, OPWDD issued Unique a "45-day letter," a precursor to Unique's program "being disbanded by the state" unless Unique "achieve[d] . . . regulatory compliance in a timely manner" and maintained such compliance. (Id. ¶¶ 17, 21). Specifically, OWPDD issued the letter based in part upon Keaton's failure as the residence manager on duty to "implement immediate protections" for the resident and to alert OPWDD within twenty-four hours of learning of an allegation of abuse. (Id. ¶¶ 18–20). The 45-day letter was the first such letter Unique received in the approximately five years that defendant Andre served as executive

director. (Id. ¶¶ 8, 21). Unique notified OPWDD of Keaton's suspension in its June 5, 2013 filing with OPWDD responsive to the 45-day letter. (Id. ¶ 22). Unique terminated Keaton on June 20, 2013, citing her actions in response to the staff incident, the allegations of abuse of a resident by staff under her supervision, and other prior performance issues. (Id. ¶¶ 23–25).

DISCUSSION.

The three-part framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Title VII retaliation and discrimination claims. See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (retaliation); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (discrimination). Under this framework, the

> plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination.

Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 251 (2d Cir. 2014).

I. Keaton Fails to Make Out a Prima Facie Showing of Title VII Discrimination.

An employer violates Title VII when the employer "discharge[s] any individual, or otherwise . . . discriminate[s] against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of discrimination on the basis of religion or national origin, the plaintiff must show that "(1) she fell within a protected class under Title VII; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 45 (2d Cir. 2015). Defendants challenge only the fourth

element: whether Keaton's suspension and ultimate termination gives rise to an inference of discrimination. (Defs. Mem. in Supp. at 13–19).

Employment discrimination claims often rest on circumstantial evidence giving rise to an inference of discrimination, rather than direct evidence of discrimination, because discriminating employers are "unlikely to leave a 'smoking gun' attesting to a discriminatory intent." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). "A plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). A potential comparator employee is "similarly situated" when the comparator "share[s] sufficient employment characteristics with that comparator." McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Plaintiff need not show that a comparator is similarly situated in "*all* respects," but rather "'all *material* respects.'" Id. (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). The fact-dependent inquiry of whether a comparator is similarly situated in "'all material respects' . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Graham, 230 F.3d at 40. Plaintiff's burden in this respect is "minimal." See McGuinness, 263 F.3d at 53.

Keaton has failed to satisfy the minimal burden of her prima facie case because she presented no evidence from which any reasonable jury could conclude that other employees were similarly situated to her and that Unique treated those employees differently for conduct of comparable seriousness. Specifically, Keaton alleged that Unique disciplined five employees in similar roles less severely for their similar performance issues, and that they received preferential

treatment because they are Caribbean or Seventh Day Adventist.  (SAC ¶¶ 9, 21–22, 31, 37). The first, Rudolph Thompson, is an insufficient comparator because he was not similarly situated in all material respects to Keaton.  As Unique's IT coordinator, Thompson had no responsibility for resident safety or oversight, which were core responsibilities of Keaton's role.  (Andre Aff. ¶ 30; Exs. P, Q).  Instead, Thompson provided technical support for the agency's hardware and software applications.  (Id. Ex. Q).  The conduct causing Unique to discipline Thompson also was not of comparable seriousness to the conduct causing Unique to discipline Keaton. Thompson was tardy in attending meetings and failed to provide written reports to his supervisor, which is less serious than failure to report an allegation of resident abuse in connection with internal and regulatory investigations. (Andre Aff. ¶¶ 18, 28, 30; Ex. R).

Defendants concede that the remaining comparators served in similar positions to Keaton.  (Defs. Mem. in Supp. at 16).  However, three of those four comparators fail because the conduct for which Unique disciplined them was not of comparable seriousness to Keaton's conduct.  Loveness Nyakudya received a written warning for failing to report a scratch on a company vehicle and for moving the car upon discovery of the damage without notifying the proper groups.  (Andre Aff. ¶ 33; Ex. U).  Unique suspended but ultimately reinstated Marie Alphonse after a favorable internal investigation in connection with complaints from her staff regarding her creation of a "tense environment" not conducive to teamwork.  (Andre Aff. ¶ 31; Ex. S).  Unique disciplined Dwela Morgan for not disclosing a parking ticket while driving a vehicle for work and for failing to follow a supervisor's directive.  (Andre Aff. ¶ 32; Ex. T). None of the conduct prompting Unique to discipline Nyakudya, Alphonse, or Morgan involved residents, their care, or their safety.  Further, none prompted Unique's regulator to act adversely towards Unique.

Unique disciplined the remaining potential comparator, Diane Jones, after numerous issues, including insubordination and inadequately addressing the medication refill needs of residents. (Andre Aff. ¶ 34; Ex. V). The conduct for which Unique disciplined Jones and Keaton thus was of comparable seriousness—namely, both employees engaged in conduct impacting client care and safety. However, Keaton has failed to offer evidence that she was treated less favorably than Jones in any respect. (Id. at 39). Even though Jones had numerous write-ups and suspensions prior to her termination and Keaton had none rising to that level (Keaton Dep. 25:4–26:6, 90:20–91:2), Unique terminated Jones, like Keaton, after a client care and safety issue arose. (Defs. 56.1 ¶¶ 36–42; Andre Aff. Ex. V). Additionally, the only evidence in the record regarding Jones' national origin and religion suggests that Jones was neither Caribbean nor Seventh Day Adventist. (Andre Aff ¶ 34). Thus, Jones cannot be a comparator for the additional reason that she, like Keaton, is an outsider to the groups that Keaton alleges earned them preferred treatment by Unique. (SAC ¶¶ 5, 30).

Because Keaton has failed to make out a prima facie case for discrimination, Keaton's disparate treatment claim under Title VII fails.

II. <u>Keaton Fails to Show that Defendants' Proffered Legitimate, Non-Retaliatory Reason is Pretext for Title VII Retaliation.</u>

Title VII further prohibits employers from discriminating against any employee who "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). As noted, it is unlawful employment practice for an employer to fail or refuse to hire an individual or otherwise interfere with the "terms, conditions, or privileges of [an individual's] employment, because of such individual's race, color, religion, sex, or national origin." Id. § 2000e-2(a)(1). To establish a prima facie case of retaliation under Title VII, an employee must show that: "(1) she was engaged in protected activity; (2) the employer was

aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). Plaintiff's prima facie burden for retaliation is minimal. Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).

If a plaintiff succeeds in making a prima facie showing of retaliation, the burden shifts to the defendant as part of the second step of the McDonnell Douglas framework to "articulate a legitimate, non-retaliatory reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

On the third and final step of establishing that the proffered reason is pretextual, plaintiff must establish "that the desire to retaliate was the but-for cause of the challenged employment action." Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir. 2015) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 339 (2013)). The element of but-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013). A plaintiff carries this burden "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions" in the reason proffered by the employer, such that a reasonable jury could conclude that the proffered reason was pretextual. Id. Showing that the retaliation occurred close in time to the plaintiff's protected activity is insufficient, without more, to satisfy plaintiff's burden of bringing forward evidence of pretext. Id. at 847.

Assuming without holding that Keaton has satisfied the minimal burden of her prima facie case, defendants have offered legitimate, non-retaliatory reasons for Keaton's termination and Keaton has failed to show that such reasons are merely pretext. OPWDD's 45-

day letter to Unique specifically cited Keaton's failure to prioritize the safety of residents when a staff dispute and allegation of abuse arose and to appropriately report the allegations. (Andre Aff. Ex. I). OPWDD's 45-day letter further placed Unique's license to operate at stake pending Unique's resolution, to OPWDD's satisfaction, of such compliance issues. (Id.). Unique's termination letter to Keaton discussed these circumstances, in addition to other "instances of poor judgment and performance," but Unique ultimately concluded that it "had no other option to terminate" Keaton in light of the OWPDD's "focus on" Keaton's errors in connection with the dispute. (Andre Aff. ¶¶ 27–28).

At the third step, no reasonable juror could conclude that Unique's explanations for these actions were a pretext for retaliation and that the retaliatory motive was the but-for cause of Keaton's suspension and termination. There is no evidence that Unique applied disciplinary criteria to Keaton in an "inconsistent, arbitrary, or discriminatory manner," which would suggest there is a question of fact as to whether the criteria were merely a pretext for unlawful retaliation. See Ruiz v. County of Rockland, 609 F.3d 486, 493 (2d Cir. 2010). There is no evidence of implausibilites or shortcomings in defendants' reason from which a reasonable jury could conclude that the proffered reason was pretextual. The record evidence, including any evidence based on the timing of the discipline in relation to Keaton's complaints, does not satisfy Keaton's burden to demonstrate the pretextual nature of defendants' proffered reason. Thus, Keaton's retaliation claim under Title VII fails.

III.  Keaton's NYCHRL Discrimination and Retaliation Claims.

Having dismissed Keaton's discrimination and retaliation claims under Title VII, the Court declines to exercise supplemental jurisdiction over Keaton's NYCHRL claims. Velazco v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir. 2015) ("[A] federal court need

not undertake such a review of a NYCHRL claim if, after disposition of the parallel federal claim, it declines to exercise pendent jurisdiction."). Accordingly, Keaton's NYCHRL claims are dismissed without prejudice to renewal in state court.

CONCLUSION.

Defendants' motion for summary judgment is GRANTED as to all of Keaton's claims except those based on the NYCHRL, which the Court dismisses without prejudice because it declines to exercise supplemental jurisdiction. (Dkt. 47). The Clerk of Court is respectfully directed to conform the caption of the case to the above, which reflects the defendants named in the operative Second Amended Complaint. The Clerk of the Court is further directed to enter judgment in favor of defendants and to close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 3, 2018